The three exceptions to evidence are without merit and need not be discussed, nor do we deem it necessary to discuss seriatim the numerous exceptions to the charge.
The plaintiff was defendant's watchman at a crossing in Monroe, over which there were nine railroad tracks. This crossing is within the *Page 451 
corporate limits and is used by a very large number of people, in consequence of which defendant employed plaintiff as a watchman to keep a lookout and conduct persons and vehicles safely across.
On 25 August, 1906, the plaintiff was on duty at the crossing and saw a wagon and a man walking beside it approaching the tracks for purpose of crossing. At the moment plaintiff was standing at the end of the freight depot, under the eaves, out of the rain, which plaintiff says was the only shelter he had. Shifting was going on on one of the tracks and cars were standing on the "house track." When plaintiff discovered the man and his wagon, he started to walk across the tracks (572) to him to tell him he could soon pass. As he crossed the mainline track a passing engine struck his leg and injured him.
1. It is contended by the defendant that there is no evidence of negligence.
The negligence consists in the alleged failure of the engineer to ring his bell in approaching this crossing, as required by the rules of the defendant, or to give any other signal.
In respect to this, plaintiff testifies: "Just before I started, I listened for a train and did not hear any; did not hear any whistle or bell; did not hear the approach of any engine or train on that side. I could not see the engine on the main line; there were cars on the house track between me and the main line." This testimony, while negative in form, partakes of an affirmative character. It is the evidence of one whose personal safety was at stake, who was on the track and who had every opportunity and reason to listen intently for an approaching engine. He says he listened and could hear no bell or other signal.
In Strickland v. R. R., 150 N.C. 7, relied on by the learned counsel for defendant, Mr. Allen, the testimony of the witness Whitley was wholly negative and worthless. He crossed the track 200 yards ahead of an approaching train and did not see the headlight on the engine. He was a casual passer, and did not say that he looked in the direction of the engine. Evidently he had no reason to look. There is therefore a marked difference in the character of Whitley's evidence and that of this plaintiff's. We think his Honor properly submitted the matter to the jury.
2. It is contended that upon the plaintiff's evidence he was guilty of contributory negligence as matter of law because he failed to look for the approaching engine before he crossed the main-line track, and therefore the motion to nonsuit should have been sustained.
We recognize the rule as laid down in a multitude of decisions of this and other courts that a person in attempting to cross a railroad track must both look and listen when he gets within the zone of (573) danger, and a failure to do so is such negligence as bars a recovery *Page 452 
for injury sustained. Cooper v. R. R., 140 N.C. 209; Coleman v. R. R.,153 N.C. 322. But, as said in the latter case, there are "exceptions to this as well as most other rules." And as said in Sherrill's case,140 N.C. 255, "attendant circumstances may so qualify this obligation to look and listen as to require the question of contributory negligence to be submitted to the jury."
While such cases are rare, we think this plaintiff has brought himself within the exception.
The plaintiff testified "that he saw a wagon standing opposite to him, five or six railroad tracks being between him and the wagon; that he was standing next to the public road at the end of the freight depot, and saw a man on the public road crossing the track; that the wagon was going towards him; that there was a man on the wagon and one walking on the ground, and that when he saw him he had stopped. When I saw the man standing there in the wagon, I started to go across the track. I was going to speak to him and tell him that he could soon pass. Just before I started, I listened for a train and did not hear any; did not hear any whistle or bell; did not hear the approach of any engine or train on that side. I could not see the engine on the main line; there were cars on the house track between me and the main line. I had a parasol with me. When at the end of the depot, it was closed, and when I started to cross the track I opened it. I was holding it over me. It was not raining much. When I started from the end of the freight depot to cross to where the man was in the wagon, I was looking at the wagon that was over there and noticing for cars, shifting engine, and box cars. I was looking over where the shifting engine was and was watching the man to keep him from crossing. I did not want him to pass at that time; there was danger from the cars. That was part of my duties. When I started, I went across the house track, and when going in that direction I was looking at the wagon that was standing over there. When I was crossing the main line, the engine hit me on the leg. The (574) engine was coming from towards the coal chute. I was at that time on the public crossing."
Plaintiff further testifies: "It was customary to ring the bell and blow the whistle when engines approached this crossing; it was my duty to keep the cars off the crossing. I could not do this unless I saw them; I wanted to watch the wagon and I wanted to watch the crossing. I told the man to hold on, because there was danger of cars being shifted at that time — box cars and switching engines. I was watching this engine to tell him of the danger of cars going on the crossing. I wanted to tell the man on the wagon not to drive on, because there was danger of the cars being shifted at that time. When there were cars on this side it was my duty to tell the people on the crossing and warn them of the *Page 453 
danger into which they were going." Plaintiff further stated "that he did not know what engine struck him; that it was one on the main line, passing through the yard. That it was not the shifting engine. That the engine had not been around there before that day; that he did not know where it was going. That he did not know where it came from. That it was not making any fuss."
Upon cross-examination plaintiff states that when he crossed the house track he did not look towards the coal chute; that if he had then looked he could have seen this engine that struck him on the main line, as there was nothing to prevent after crossing the house track; that he did not look towards the coal chute because he did not hear any bell and "did not hear any sign of any train." Plaintiff gives his excuse for not looking down the main line towards coal chute: "I did not hear anything of any bell and did not hear any sign of any train. Instead of looking for a train, I was looking for that wagon. Instead of looking towards the coal chute, I was looking towards the wagon." He further says he knew the wagon was across the tracks, and that he used his hand to signal it, in order to keep it from crossing until it was safe to do so.
The evidence of plaintiff tends to prove that he was attending to his duties. At the time that he was stricken his attention (575) was fastened upon the shifting engine, shifting cars immediately west of the crossing, and over the crossing, and to the man and wagon at that time endeavoring to cross the tracks. There was no other engine upon the yards and had not been since the regular trains had left. He had no occasion to anticipate the approach of any trains or engine. The one that struck him had not been upon the yard that day. It came from the round-house and gave no signal of its approach. The plaintiff, with his attention fixed upon the shifting engine and the travelers, was taken by surprise. He listened for the approach of trains and heard no noise before starting from the shed to cross the tracks to the wagon. Being satisfied by listening that no train was approaching, he started to the wagon and at same time signaling by hand and voice to attract the driver's attention.
The plaintiff was an employee of the defendant and in the actual discharge of his duties when injured. His station was at this crossing and his duties required him to be almost constantly on and near the tracks, crossing and recrossing. He is not, therefore, to be judged as a trespasser, licensee, or traveler, who has nothing to do but look and listen when they approach a railroad track.
The employee whose occupation requires his presence on and near the tracks has other duties to engage his attention. The passer-by, whose sole duty is to look and listen, is held to a greater degree of vigilance than the employee, whose attention must necessarily be diverted by his *Page 454 
work. Brown v. R. R., 144 N.C. 635; Smith v. R. R., 132 N.C. 819.
The plaintiff was employed in a most dangerous work, requiring his almost constant presence on the tracks. Under such circumstances the defendant owed him the duty of active vigilance in giving warning of the approach of engines and trains and the plaintiff had the right to rely upon the performance of this duty in discharging his own duty and caring for his personal safety.
While plaintiff assumed the risks naturally incident to so (576) dangerous an occupation, a failure to ring the bell or give other warning of the approach of trains is a risk not assumed by him.Schultz v. R. R., 37 Minn. 271; R. R. v. Henze, 71 Mo., 636.
In Erickson v. R. R., 41 Minn., 500, it is said: "Had plaintiff been employed by defendant to work on its tracks, there probably would have been no question raised that defendant would have owed him the duty of active vigilance," and it is held that the employee had the right to rely upon the continued performance of defendant's duty to give proper signals of the approach of trains.
It must not be assumed, however, that the plaintiff, a watchman at a crossing for the protection of passers, is relieved from all obligation to look as well as listen for approaching engines. He is under the highest obligation to do so, both for the protection of travelers as well as for his own safety. But this duty is to be considered in connection with his primary duty to warn and protect travelers approaching the crossing, and as far as his immediate duty to them will permit, the watchman must look as well as listen.
The rule is well stated by Mr. Justice Manning in Farris v. R. R.,151 N.C. 490: "While we are in no wise inclined to relieve the person crossing the tracks of a railroad from the imperative duty of observing the measure of caution so well established for the safety by the well-considered decisions of this and other courts, yet it can not always be said that he is guilty of contributory negligence, as a matter of law, because he did not continue to look and listen at all times continuously for approaching trains, where he was misled by the company or his attention was rightfully directed to something else as well."
This reasonable rule is supported by the adjudications of other States as well as text-writers, 3 Elliott on Railroads, sec. 1166 A, and cases cited, and is both humane and conservative of human life, as well as consonant with sound public policy.
Under the circumstances testified to by plaintiff, we do not (577) think as matter of legal inference that he was necessarily guilty of contributory negligence. His Honor properly submitted the conduct of the plaintiff upon all the evidence to the judgment of the jury under "the rule of the prudent man," and substantially instructed them *Page 455 
that it was plaintiff's duty to exercise all reasonable vigilance by looking as well as listening for approaching trains as the circumstances and his occupation and duty to the traveler permitted, and that if he failed to do so it was such contributory negligence as barred recovery.
Under the circumstances in evidence in this case we find no error in such instruction.
We do not deem it necessary to further discuss the exceptions to the charge. They are disposed of by the views expressed in this opinion.
Upon the whole record we find
No error.
Cited: Fann v. R. R., 155 N.C. 143; Zachary v. R. R., 156 N.C. 503;Johnson v. R. R., 163 N.C. 443; Shepard v. R. R., 166 N.C. 545;Penninger v. R. R., 170 N.C. 475.