## FRANKLIN v. LINVILLE RIVER RAILWAY COMPANY.

### (Filed 15 December, 1926.)

**1. Railroads—Crossings—Negligence—Motor Cars.**

In the running of motor cars upon its tracks a railroad company· is required to observe the same care in approaching a frequented highway or road crossing as in the operation of its trains thereon.

**2. Same—Evidence—Contributory Negligence—Proximate Cause—Questions for Jury—Nonsuit.**

Where there is evidence that a pedestrian upon a public road saw defendant railroad company's motor car standing upon one of its tracks about fifty or seventy-five yards from the point the road crossed the railroad tracks, and at this point he was a few minutes thereafter injured by the motor car coming without signal or warning and without his knowledge of its approach until it was upon him, it is for the jury to determine the question as to whether the negligence of the defendant or that of the plaintiff was the proximate cause of the resulting injury, and to deny defendant's motion as of nonsuit thereon.

**3. Same—Warnings.**

Testimony of the plaintiff that he had not heard the required signals or warnings from a motor car of defendant railroad company as it approached on the defendant's track a frequented highway or road crossing, is legal evidence that such warnings were not given.

**4. Railroads—Crossings—Contributory Negligence.**

It is required of a person to make diligent use of his senses to discover whether there is danger in crossing a railroad track in constant use.

CIVIL ACTION before *Lane, J.,* at July Term, 1926, of AVERY.

The defendant operates a line of railway through the town of Montezuma, and also operates motor cars or lever cars on its said tracks through said town. In said town there was a public crossing across said line of railway extending from the east to the west side thereof, near the store known as the Loven Store. The citizens of said town and· county had been accustomed to pass and repass over said crossing for the last thirty years. On or about 21 October, 1925, the defendant was operating on its tracks a motor or lever car.

The plaintiff testified as follows: I came out of the storehouse and walked on the cement walk and turned to go south to my place, and I looked and saw this lever car setting down at the depot, and I looked and its back was to me, and it was facing Newland, I mean the driver of the car. This was fifty or seventy-five yards, and about fifty yards from where I was at. It was about thirty yards from the store porch up to this crossing. After I stood and looked and saw it headed this way going to Newland I thought to myself it came from Linville

and had started to Newland, and I never looked for him any more until I walked that distance. I walked up to the crossing pretty fast. I was in a hurry to get home. I walked up to the edge of the crossing, came to the east end of it, stepped on the crossing and was going to walk upon the crossing toward the upper end. I heard a noise of something running and turned my head to the right, and this lever car was in about eight or ten feet of me as near as I could tell. It was going right backwards on to me. The driver of the car was sitting with his back to me and his face down over here and was reaching down like he was reaching for something in front of the car and not looking at me when I looked at him. . . . I made a jump to the left . . . and as I jumped I got my body and leg over the crossing rails, but I did not get my left thigh from the end of the lever. The end of the lever struck my thigh, and I struck my arm bone on end of the car that was sticking out of the side. . . . I could not tell the rate of the speed the car was coming. It looked to me like it was coming as fast as it could run. It was making full speed, was running at the rate of ten or fifteen, maybe twenty miles. . . . I never heard any signal until I heard the noise and turned my head to the right and saw it coming on the track. . . . I walked by the side of the railroad track about ten or fifteen yards from the end of the cement up to the track crossing. . . . When I started to walk on the track I looked down the road. I did not look back down to the depot for I had no thought but what he was coming this way if I had looked back that way. I do not know whether I could have seen this car or not—I haven't eyes behind me. . . . Q. You walked down the railroad and then stepped over on the railroad track without looking back to the depot? A. I had already looked. I don't know that I looked right there but I looked when I started back down there. I told you I looked when I started out there. . . . When I was stepping on the track if I had looked down the road I might have seen it. I don't know that I would have seen him. . . . The car was something like forty or fifty yards from the store when I looked. After I looked at the car I walked twenty-five or thirty yards. . . . When I saw the car at the depot it was standing still. . . . The driver of a lever car faces the way he is going. He was sitting with his face toward Newland and his back to me."

At the conclusion of plaintiff's evidence, the trial judge entered judgment of nonsuit, and the plaintiff appealed.

*Harrison Baird, W. C. Newland, S. J. Ervin* and *S. J. Ervin, Jr.,* for plaintiff.

*T. A. Love, James H. Epps* and *F. A. Linney* for defendant.

BROGDEN, J.  The evidence for plaintiff, viewed in its most favorable light, tends to show that plaintiff came out of a store near the track of the defendant.  He looked and saw to the north a lever car or motor car of the defendant, apparently facing north, and standing still.  The plaintiff then walked south about twenty-five or thirty yards to a public crossing, and at that place, attempted to cross the track when he suddenly heard a noise of something running.  He turned his head and the motor car of defendant was being backed over said crossing, the motorman facing north and backing south, and bending down, apparently looking at some part of the machinery.  The plaintiff was struck and injured.

The same rule of liability applies to a railroad motor car in backing over a crossing with respect to notice as to engine or box-car, for the reason that "both can wound and kill."  *Hill v. R. R.*, 166 N. C., 592.  The crossing at which plaintiff was injured was a grade crossing and had been used as a public crossing for many years.  "It is the duty of an engineer in charge of a moving train to give some signal of its approach to the crossing of a public highway over a railway track, or to a crossing which the public have been habitually permitted to use, and where he fails to do so, the railroad company is deemed negligent and answerable for any injury due to such omission of duty."  *Russell v. R. R.*, 118 N. C., 1108; *Bradley v. R. R.*, 126 N. C., 738; *Farris v. R. R.*, 151 N. C., 487; *Bagwell v. R. R.*, 167 N. C., 611; *Goff v. R. R.*, 179 N. C., 216; *Perry v. R. R.*, 180 N. C., 290; *Earwood v. R. R., ante*, 27.

The plaintiff testified that he heard no signal prior to or at the time he stepped upon the crossing.  This is some evidence that no signal was given.  *Goff v. R. R.*, 179 N. C., 216; *Perry v. R. R.*, 180 N. C., 290; *Earwood v. R. R., supra*.  The law makes it the duty of the person using a crossing of a railroad track to make diligent use of his senses in order to discover whether there is danger of injury or collision.  However, as stated by *Allen, J.*, in *Horne v. R. R.*, 170 N. C., 650: "In other words, if it is admitted that both the defendant and the intestate of plaintiff were negligent, the negligence of plaintiff's intestate does not bar recovery unless it was the proximate cause of the injury, and the question as to whether it was the proximate cause is for the jury, if two reasonable minds could come to different conclusions upon the question," etc.

We cannot say, as a matter of law, that the plaintiff was guilty of contributory negligence upon his own evidence, and, therefore, the questions of contributory negligence and proximate cause should be submitted to the jury.

In fairness to the litigants, it is deemed inadvisable to discuss at length the principles of law involved, for the reason that we are of the opinion that there was sufficient evidence to be submitted to the jury, and the case should be tried upon its merits, free from any intimation by this Court.

Reversed.