W. W. ELLER v. NORTH CAROLINA RAILROAD COMPANY AND SOUTHERN RAILWAY COMPANY.

(Filed 1 April, 1931.)

1. **Railroads D b—In this action to recover for injuries sustained in collision at crossing nonsuit should have been granted.**

A driver of an automobile is required to look and listen for approaching trains before going upon a railroad grade crossing, and where the evidence tends to show that the plaintiff was riding with his curtains up and that the collision with defendant's train was in broad daylight, and

that the plaintiff had an unobstructed view of the track for 300 to 400 yards, except for a passing automobile, the defendant's motion as of nonsuit should be allowed. *Batchelor v. R. R.*, 196 N. C., 84, and other cases cited and applied; *Thurston v. R. R.*, 199 N. C., 496, and other cases cited and distinguished.

**2. Same—Negligence—Contributory negligence.**

Where the evidence tends to show that the plaintiff negligently or without due regard for his own safety was personally injured in a collision of his automobile with defendant's train at a grade crossing in a town, the fact that there was also evidence of the failure of the defendant to give the usual signals required for the approach of a train to a crossing is not sufficient to deny the defendant's motion as of nonsuit, under the facts of this case.

**3. Same—Railroad company is not liable for obstruction of crossing by passing automobile.**

A railroad company will be held responsible only for such obstructions at a grade crossing as are under its control or management, and it will not be held responsible for an obstruction of plaintiff's vision by automobiles happening to pass at the time of the collision between the plaintiff's automobile with the defendant's train.

**4. Same—Evidence held insufficient to establish allegation that guard rail was negligently constructed.**

Under the facts of this case the maintenance by the defendant railroad company of a guard rail three and one-half inches from the main rail, between which the wheels of plaintiff's automobile was caught, preventing him from turning off the track in time to avoid the collision, is held insufficient evidence of negligent construction of the guard rail.

**5. Same—Failure of railroad company to maintain flagman or signaling devices at crossings in this case held not evidence of negligence.**

Although the failure of a railroad company to provide a watchman or signaling devices at a crossing may be considered by the jury in proper cases upon the question of negligence, the fact that a crossing is much used has not been held sufficient to raise the question, all cases holding that a watchman or signals should have been provided being where the crossing was obstructed by structures, curves, or peculiar conditions.

CIVIL ACTION, before *MacRae, Special Judge,* at May Term, 1930, of ALAMANCE.

On 12 March, 1929, the plaintiff, a citizen and resident of Burlington, North Carolina, was taking his wife to school where she was employed as substitute teacher, and was traveling in a Ford roadster. He entered Hoke Street and traveled along said street in the direction of the school. The tracks of the defendant crossed Hoke Street at grade. The tracks run east and west and Hoke Street runs north and south. Park Avenue parallels the railroad track, and thus runs east and west on the south side of the track. The curb of Park Avenue is 40 or 50 feet from the south rail of the main track. Hoke Street is a paved street and the

pavement extends across the railroad tracks into what is known as Fisher Street. All of the witnesses testified that Hoke Street was a "nice street."

The side curtains were up and the plaintiff approached the crossing at about 8:15 or 8:26 in the morning. The plaintiff testified that as he moved toward the crossing there were one or two cars ahead of him going in the same direction. One car stopped like it was going to turn in. The other car proceeded across the track. The car crossing the track "was about 15 or 20 feet in front of me. . . . This car I was following kept on across the track. I saw this car parked there to my right. I did not stop there. I did not see a car stopped on the other side of the railroad tracks to my left. There was one car that came across. There were several cars crossing coming towards me, and as this car came on across the track the one in front came on across and kinder knocked the view off from me. . . . There were several cars coming across." Plaintiff further testified at the time he got even with the car parked near the crossing that "a child stepped out like it was going to cross in front of me, and I kinder slowed down, and when I looked up the front of the car was just on the front of the track and I saw the train almost at once, and I cut the car sharp to the right. . . . When I looked up the train was right there on me and the front end of the car was just up on the track."

Plaintiff's wife, who was a passenger in the car, testified: "I am familiar with this crossing. My husband was going with me on this morning. We were traveling in a Ford. I would say we approached this crossing between eight and ten miles an hour. No bell was ringing or signal blown by the engine. . . . When this other car came across the railroad it obstructed his view and he could not see up the track. Just as he got on the track he saw the train, and it was right on us, and he attempted to turn the steering wheel to the right, and when he did that it caught in the cross-ties of the track and he could not get it out any further, and when he did that just as he turned to the right I immediately jumped out of the car. . . . As we approached this crossing Mr. Coulter's car was ahead of our car. Mrs. Thompson's car was ahead of Mr. Coulter's car. When Mrs. Thompson got to the crossing it looked as if she was going to turn around. When she stopped she was very close to the curb. . . . She was driving a Hudson. When she stopped Mr. Coulter's car passed her car and went right across the track. We were close on behind. Mr. Coulter's car barely did get across the track. . . . There was no obstruction of any kind between Park Avenue and the railroad track. The railroad track comes right down the middle of Park Avenue. Park Avenue is a hard sur-

face street. . . . I would say Park Avenue is a regulation width street as compared with other streets. . . . There were cars coming meeting our car at the crossing on the other side of the track. I know one particular car obstructed our view because cars were parked and we could not see. There was only one car that I actually remember meeting. . . . There were other cars on the other side. They were stopped. They were stopped there waiting for the train to pass. . . . When I first approached Park Avenue I did not see the train and did not hear it. I looked some more before our car was on the track. I told you this car that came across obstructed my view. . . . We had the curtains up that morning."

Mr. Coulter, who was carrying his children to school just ahead of plaintiff's car, testified that he did not hear any bell or signal. He further testified that he saw the train and that it was about 150 feet away as he undertook to cross the track.

The evidence discloses that the Hoke Street crossing was a populous and much used crossing, especially by school children, and that there was no watchman or signal devices at the crossing. The evidence of plaintiff further discloses that there was a stop sign at the crossing. The evidence of plaintiff further showed that when you "come in line with Park Avenue you can see up the railroad several hundred yards." This distance was estimated at 300 to 400 yards, and there was no evidence to the contrary.

The usual issues were submitted to the jury and answered in favor of plaintiff. The issue of damages was answered in the sum of $8,000.

From judgment upon the verdict the defendant appealed.

*H. J. Rhodes and Frazier & Frazier for plaintiff.*
*Hines, Kelly & Boren and J. Dolph Long for defendant.*

BROGDEN, J. The case presents this situation: Hoke Street in the city of Burlington is an improved and paved street. The tracks of defendant crossed this street at grade. Park Avenue, a paved and improved street, is on the south side of the tracks. The plaintiff approached this crossing, without stopping, although he looked and listened and neither heard nor saw a train. The side curtains were up. When he came in line with Park Avenue, a distance of 40 or 50 feet from the track, he had a clear sweep of unobstructed vision for at least 300 to 400 yards, except for the fact that a car crossing the tracks at the time interfered with the view. At the instant his car ran upon the track a fast passenger train, exceeding the speed limit, was upon him. He turned sharply to the right, and the wheels of his car were caught between the main rail and the guard rail, and he was seriously and permanently injured.

There are two lines of decisions involving crossing accidents that run through the body of our law, as clearly marked and defined as the Gulf Stream that runs through the midst of the ocean. The first line is represented, among others, by the following decisions: *Edwards v. R. R.*, 129 N. C., 78; *Shepard v. R. R.*, 166 N. C., 539; *Perry v. R. R.*, 180 N. C., 290; *Williams v. R. R.*, 187 N. C., 348; *Franklin v. R. R.*, 192 N. C., 717; *Moseley v. R. R.*, 197 N. C., 628; *Scoggins v. R. R.*, 199 N. C., 631; *Thurston v. R. R.*, 199 N. C., 496; *Butner v. R. R.*, 199 N. C., 695. The second line is represented, among others, by the following decisions, to wit: *Rigler v. R. R.*, 94 N. C., 604; *Coleman v. R. R.*, 153 N. C., 322; *Davidson v. R. R.*, 171 N. C., 634; *Holton v. R. R.*, 188 N. C., 277; *Elder v. R. R.*, 194 N. C., 617; *Harrison v. R. R.*, 194 N. C., 656; *Pope v. R. R.*, 195 N. C., 67; *Batchelor v. R. R.*, 196 N. C., 84; *Herman v. R. R.*, 197 N. C., 718.

The paramount question of law is whether the case at bar is governed by the principles announced in the first line or second line aforesaid. Perhaps a book of imposing dimensions could be written upon the various phases of law discussed and applied in the decisions, but upon a consideration of the entire record, we are of the opinion, and so hold, that the case is governed by the principles applied in the second line. Therefore, the plaintiff is not entitled to recover, and the motion for nonsuit should have been granted.

The plaintiff, however, in order to avoid classification in the second line above mentioned, asserts and contends that there are two elements of negligence on the part of defendant in addition to failure to ring the bell or sound the whistle, which would warrant recovery. The first element is that no watchman was maintained at the Hoke Street crossing and no signaling devices of any sort to give notice of the approach of the train. It is well settled that a failure to provide a watchman or signaling devices at railroad crossings may in proper cases be considered by a jury upon the question of negligence of the railroad company in personal injury suits for crossing accidents. However, the fact that a crossing was much used and populous, standing alone, has not yet been deemed sufficient by this Court to raise the question. The authorities upon the subject are assembled in *Batchelor v. R. R.*, 196 N. C., 84. In all cases in which the doctrine has been applied there have been elements of obstructed vision resulting from structures, curves or embankments or other conditions of peculiar danger interfering with the view of a traveler undertaking to cross the track. The second element of negligence insisted upon by the plaintiff is that a car crossing the track at the time he arrived obstructed his view. Such obstruction, however, was not due to any fault of the railroad company, and, indeed, was a circumstance wholly beyond its control. This element was discussed in *Lee v.*

*R. R.,* 180 N. C., at page 413. The plaintiff contended in that case that his vision was obstructed by smoke. The Court said: "If the plaintiff had a bandage across his eyes, the law would not permit him to walk on a track, where he might reasonably expect a train without removing it, and the smoke was as effective as a bandage would be in obscuring or blotting out the vision for the time and almost as easily and speedily gotten rid of."

There is a contention that there is a space of three and a half inches between the guard rail and the main rail, and that this rendered the crossing dangerous and constituted an element of negligence by reason of the fact that the wheels of plaintiff's car caught in this space. There was evidence tending to show that the flange on a car wheel is about one and a half inches. However, there is no evidence that a space of three and a half inches between the main rail and the guard of the track constituted negligent construction.

In the final analysis the facts present the typical case of a traveler approaching a grade crossing in the day time and with an unobstructed vision for three or four hundred yards, who proceeds without stopping fifty feet or more through such area of unobstructed vision and comes upon a track at an instant when a fast passenger train is dangerously near and almost upon him. The evidence discloses that Mr. Coulter crossed the track when the train was 150 feet away. The plaintiff was fifteen to twenty feet behind Mr. Coulter. Manifestly, he took a chance and lost. Under the circumstances, it is the judgment of the Court that he is not entitled to recover.

Reversed.