JAMES McLELLAN *v.* NORTH CAROLINA RAILROAD COMPANY.

(Filed 19 April, 1911.)

Railroads — Public Crossings — Gates — Warnings — Negligence — Contributory Negligence—Rule of the Prudent Man—Questions for Jury.

The defendant and two other railroads each had a track where a public road crossed, protected at each side by gates operated by compressed air, under the charge of a gatekeeper, who, according to custom, rang a gong to give warning of approaching trains. While plaintiff was crossing the tracks in a buggy, his horse at a trot, the gong sounded for an approaching train, and in endeavoring to get through the opposite gate it fell upon his horse, which consequently caused personal injury to the plaintiff. There was conflicting evidence as to whether the gate could be stopped after it had started to be lowered. *Held*, (1) evidence was competent tending to show defendant's custom in ringing the gong to give time for those between the gates to get through; (2) evidence sufficient upon the issue of defendant's negligence; (3) plaintiff was not guilty of contributory negligence, as a matter of law, in not seeking a place of safety between the gates, and this question was properly submitted to the jury under instructions as to the rule of the prudent man.

155—1

APPEAL from *Daniels, J.,* at the January Term, 1911, of DURHAM.

Civil action brought to recover damages for alleged negligence upon the part of defendant's gate-keeper in injuring plaintiff while passing through the railroad gates protecting the tracks at Corcoran street crossing in the city of Durham.

The usual issues of negligence, contributory negligence and damages were submitted.

The jury answered the issues in favor of the plaintiff and assessed his damage at $1,000. Defendant appealed.

*Bryan & Brogden for plaintiff.*
*Guthrie & Guthrie and J. Lathrop Morehead for defendant.*

BROWN, J. The facts are that the defendant operated railway gates on both sides of Corcoran street crossing in the city of Durham for the protection of its tracks, as well as those of the Norfolk & Western and Seaboard Air Line railways.

On the 22d of December, 1909, the gates being up, plaintiff entered upon the crossing, going south, driving a horse and buggy. When within fifty-nine feet of the south gate the gong in the gate-tower sounded, a signal that a train was approaching and that gates would close. The plaintiff was then on the N. & W. track, and his horse in a trot. He did not stop, but drove on, attempting to get through the south gate before it closed. The gate descended on the horse's back, causing the animal to plunge through the gate, throwing plaintiff out and seriously injuring him.

The plaintiff offered evidence tending to prove it was defendant's custom to sound the gong as a warning to those between the gates and to give them an opportunity to pass out before the gates were lowered, and that plaintiff was acquainted with and relied upon this custom. To this evidence defendant excepted.

We think it was competent to prove the custom of defendant in sounding the gong and that plaintiff knew of the custom and relied on it. *Parrott v. R. R.,* 140 N. C., 549; 1 Wigmore, sec. 92, sec. 376. But a discussion of this exception is unnecessary as it is proven by defendant's witnesses that there was a gong

McLELLAN *v*. R. R.

on the tower used for the purpose of giving notice of the lower-
ing of the gates, and the gate-keeper testified that he sounded
the gong on this occasion. This is a very proper precaution,
for the sounding of the gong not only serves to notify those then
on the tracks to hasten off, but to those approaching the crossing
it is a signal to stop, which they must heed at their peril.

The other exceptions to the evidence, upon examination, we
think, are without merit and need not be discussed.

In apt time, defendant moved to nonsuit: (1) Upon ground
that there is no evidence of negligence, and (2) that the plain-
tiff, as a matter of law, was guilty of contributory negligence
upon his own showing.

The evidence of negligence is plenary. It was the gate-keeper's
duty to observe those who were crossing the tracks when he com-
menced to lower the gates. When he saw plaintiff trotting his
horse in his endeavor to get through the gate it was the gate-
keeper's duty to momentarily arrest the descent of the gate and
not let it come down on the horse's back.

It is said the gate was operated by compressed air and could
not be stopped.

The defendant's witness, the gate-keeper, testified that he had
never had occasion to stop the gates when he started them down,
and further stated, "I expect you can stop them in any position
if they are in proper order. Gates were in pretty good condition
that day; about as good as they had been."

The fact is that the gate-keeper made no attempt to stop the
gates, although he saw plaintiff, and must have known that his
purpose was to escape from the peril he was in by being on the
tracks when a train was approaching on one of them.

Upon the question of contributory negligence the evidence
shows that when the gong sounded as a signal that a train was
approaching and that the gates would be closed, plaintiff was
only fifty-nine feet from the south gate on the N. & W. track,
and his horse at a trot.

We cannot say as matter of law that he should have stopped
and waited on the track until the train passed. It is a very
dangerous and unpleasant position to occupy to be in a buggy
between closed gates enclosing three railroad tracks when a train

is passing on one of them. The plaintiff was in a position of danger, and doubtless his first impulse was to push ahead and drive on through the gate.

We think upon this issue the trial judge gave the defendant all it was entitled to when he submitted plaintiff's conduct under the circumstances to the judgment of the jury under the rule of the prudent man.

No error.