## F. M. POPE v. ATLANTIC COAST LINE RAILROAD COMPANY.

### (Filed 31 January, 1928.)

#### Railroads—Operation—Injuries to Person on Track—Crossings—Negligence—Contributory Negligence—Nonsuit.

When a pedestrian attempts to cross a railroad track on the street of a town without looking, under ordinary circumstances, to ascertain whether a train is approaching, when the view is unobstructed and there is nothing to prevent his thus apprehending the danger in time to avoid injury, or any circumstances from which he may reasonably infer this precaution unnecessary, his own negligence in so acting is the proximate cause of his injury and is a bar to his recovery, though the defendant was negligent in not giving proper warnings of approach; and, upon this uncontradicted evidence, plaintiff's motion as of nonsuit should be allowed.

CLARKSON and CONNOR, J.J., dissent.

CIVIL ACTION, before *Nunn, J.,* at April Term, 1927, of EDGECOMBE.

Nash and Marigold streets in the city of Rocky Mount are much used thoroughfares by pedestrians and vehicles. These two streets constitute one thoroughfare. Nash Street is on the Nash County side and Marigold Street on the Edgecombe County side. The street runs practically east and west. Three tracks of the defendant railroad cross this street at grade. The tracks of the railroad run approximately north and south at the crossing. West Main Street intersects Nash Street west of the railroad track. On 15 August, 1925, the plaintiff, an elderly man, was city cotton weigher. The cotton yard is east of all the tracks of the defendant. On said date, about 10:00 or 11:00 o'clock in the morning, the plaintiff started to the cotton yard along Nash Street, traveling east. According to his testimony he stopped at the corner of Nash and Main streets and looked south towards the depot of defendant, which was approximately 455 feet south of the crossing, and saw a passenger train standing still, headed north or towards the crossing. The plaintiff crossed West Main Street, which is about 35 feet wide, and proceeded along the south side of Nash Street until he reached a point about 8 or 10 feet west of the first track of defendant, crossing said Nash Street. He looked again to his right or south towards the depot and saw this passenger train still standing at the station. He then walked east 8 or 10 feet to the first track, and then turned to his left, walked along side of this track north, with his back to the station, across Nash Street, which is 40 or 50 feet wide. As he was proceeding north crossing Nash Street, he was delayed by two automobiles about a half minute. Upon reaching the north side of Nash Street he then turned east again and crossed the southbound track of defendant and approached the northbound track, and, while on the northbound track, was struck by said passenger train and injured.

His testimony further showed that the train gave no signal by whistle or bell. The engineer of the train testified that he did not blow the whistle for this crossing because there was an ordinance of Rocky Mount in force which prohibited the blowing of the whistle. There was further testimony for the plaintiff to the effect that the train was drifting and was making no noise. The evidence of plaintiff tended to show that the train was going eight or ten miles an hour at the time plaintiff was struck. Plaintiff testified that the track where he was struck was "as straight as an arrow," and that a man standing within eight feet of the track upon which he was injured, could see 200 yards south and to Tar River on the north. There was nothing at the crossing to obstruct the vision. Plaintiff said: "Both engineer and fireman were bound to see if they had been looking—not a stick in the way. . . . The engineer could see me at this time—nothing in the world to keep him from it. There was nothing between me and where I saw that engine but the iron and crossties. There are three tracks at this place."

The issues and answers of the jury thereto were as follows:

1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? A. Yes.

2. Did the plaintiff by his own negligence contribute to his injury? A. No.

3. What damage, if any, is the plaintiff entitled to recover of the defendant? A. $5,000.00.

From the judgment on the verdict the defendant appealed, assigning errors.

*R. T. Fountain and Geo. M. Fountain for plaintiff.*
*Spruill & Spruill and Gilliam & Bond for defendant.*

BROGDEN, J. The evidence of plaintiff was to the effect that while traveling along Nash Street and arriving at a point 8 or 10 feet west of the first track of defendant railroad, crossing said street, he looked to his right or south a distance of 455 feet, and saw defendant's passenger train headed north, towards the crossing, but standing still. Thereupon he pursued his course eastwardly 8 or 10 feet until he reached the first track of defendant. He then turned to his left northwardly to cross Nash Street, with his back to the train. Two automobiles passed along the street and delayed his journey about a half minute. He reached the north side of Nash Street and then turned again eastwardly, walking across the southbound track, and stepped upon the northbound track, and while walking across said northbound track, was struck by said train. The plaintiff was familiar with the crossing and crossed there every day. He did not look for the train from the time he was

8 or 10 feet west of the first track. He walked to the first track without looking. He then turned northward with his back to the train and walked 40 or 50 feet without looking. He then turned eastward and walked approximately 25 or 30 feet across the southbound track without looking. He then stepped upon the northbound track, without looking, and according to his testimony, never looked at all while traveling a distance of "70 feet or probably a little more." The track at the crossing was as straight as an arrow and there were no obstructions whatever, interfering with the view of the approaching train. The train was running slowly.

The evidence of plaintiff tended to show that the train gave no signal as it approached this important and much used crossing. The defendant, therefore, was guilty of negligence. *Bagwell v. R. R.,* 167 N. C., 611; *Williams v. R. R.,* 187 N. C., 348; *Earwood v. R. R.,* 192 N. C., 27.

The defendant, however, contends that the testimony of plaintiff discloses such a plain disregard of the duty imposed by law upon a pedestrian at a railroad crossing as to bar his recovery. This is the decisive question in the case. There are a multitude of decisions by this Court upon the subject of the duty of a pedestrian in attempting to cross a railroad track. The general rule is thus expressed by *Brown, J.,* in *Coleman v. R. R.,* 153 N. C., 325: "The law imposes the equal duty upon the traveler when he reaches a crossing and before attempting to go on the track to both look and listen for approaching trains, for the traveler, by doing so, if there is nothing in his way, can most certainly prevent a collision and save himself from harm. When he reaches the track, it is no great hardship imposed upon the traveler to require him to exercise ordinary prudence and to cast his eye up and down the track. By so doing he has the last and most certain chance to prevent collisions and to save himself as well as the train, its crew and passengers from possible injury. . . . There are of course exceptions to this, as well as most other rules, but where the traveler 'can see and won't see' he must bear the consequences of his own folly. His negligence under such conditions bars recovery because it is the proximate cause of his injury. He has the last opportunity to avoid injury and fails to take advantage of it." The opinion proceeds further: "When must a traveler look? A writer in the Personal Injury Law Journal of July, 1910, declares that all conflicts of opinion on this subject may be avoided by adopting the common-sense rule that the traveler should look when about to enter upon the track."

Again, in *Davidson v. R. R.,* 171 N. C., 636, the law is thus declared: "It is well settled that where a pedestrian, in the *daytime,* steps upon a railroad track, the view of which is unobstructed, and is injured thereby,

and has not looked or listened, his own negligence is the proximate cause of the injury, and such negligence will preclude his recovery."

In *Holton v. R. R.,* 188 N. C., 277, *Hoke, J.,* declares the law to be: "It is the recognized duty of a person on or approaching a railroad crossing to 'look and listen in both directions for approaching trains if not prevented from doing so by the fault of the railroad company or other circumstances clearing him from blame,' and where, as to persons other than employees of the company, there has been a breach of this duty clearly concurring as a proximate cause of the injury, recovery therefor is barred."

All the evidence in the case discloses that there were no obstructions at the crossing, and that plaintiff was not prevented from looking "by the fault of the railroad company."

Now, what are, under the decisions, "other circumstances clearing him from blame?" These may be classified as follows:

1. Where the view of the traveler is obstructed by boxcars, engines, trees, bushes, crops or other obstructions which would render looking ineffective. *Norton v. R. R.,* 122 N. C., 910; *Penninger v. R. R.,* 170 N. C., 473; *Perry v. R. R.,* 180 N. C., 290; *Rigsbee v. R. R.,* 190 N. C., 231.

2. Where gates, flagmen or watchmen are maintained at a crossing a traveler is not negligent, as a matter of law, when the gates are open if he entered upon the track without looking or listening. *Russell v. R. R.,* 118 N. C., 1098; *McLellan v. R. R.,* 155 N. C., 1.

3. In cases of sudden peril, imminent danger and emergency not brought about by the negligence of the traveler. *McLellan v. R. R.,* 155 N. C., 1; *Hinton v. R. R.,* 172 N. C., 587; *Odom v. R. R.,* 193 N. C., 442.

4. The existence of unusual and extraordinary conditions created by the railroad company, which tend to distract and divert the attention of a man of ordinary prudence and self-possession from the duty of looking and listening effectively for an approaching train. *Farris v. R. R.,* 151 N. C., 484; *Plyler v. R. R.,* 185 N. C., 357; *Chisholm v. R. R.,* 114 S. E., 500.

None of these exceptions apply in this case, and therefore the general rule, as announced by the Court in many decisions in which recovery has been denied, must be given full force and effect.

The plaintiff relies upon *Franklin v. R. R.,* 192 N. C., 717. The *Franklin case* marks the utmost boundary of a tendency to relax the common-sense rule of prudence, which is so intimately woven into our law. In that case a lever car had just passed the crossing in question, headed in the opposite direction. The plaintiff saw the car standing still at the station. He then walked rapidly 25 or 30 yards to the

MONTEITH *v.* COMMISSIONERS OF JACKSON.

crossing, and this same car, having been reversed, was traveling backwards over the identical crossing which it had passed an instant before, headed in the opposite direction. Certainly this was an unusual movement of the car.

In the case at bar plaintiff knew that this was a regular passenger train, headed in his direction. He crossed at this crossing every morning, as his place of business was on the east side of the tracks, and therefore must have been advertent to the usual operation of the passenger trains. The plaintiff said: "On the morning of the accident I was hurrying to get to my business, walking along right peart. My mind was on my cotton and I was looking across to see if they had weighed up any." A casual glance of the eye before stepping upon the northbound track, would doubtless have averted the unfortunate injury which the plaintiff has suffered, but what is written in the law is written, and it is the duty of the Court to apply it. Therefore, we hold that the motion for nonsuit should have been allowed.

Reversed.

CLARKSON and CONNOR, J.J., dissent.