BESSIE W. GOLDSTEIN v. ATLANTIC COAST LINE RAILROAD COMPANY AND HARRY GOLDSTEIN.

(Filed 14 September, 1932.)

1. Railroads D b—Railroad held not required to maintain watchman or signals at crossing in this case.

Where the evidence discloses that no regular trains were operated over a railroad track at a grade crossing or regular shifting done at this point, that the highway was straight and there were no obstructions at

the crossing: *Held*, the evidence is insufficient as a matter of law to require the railroad company to maintain a watchman or signaling device before the crossing.

2. **Same—Plaintiff has burden of proving violation of city ordinance relating to crossing when relied on by him in negligence action.**

Where the plaintiff in an action to recover damages sustained in a collision at a railroad crossing relies on the violation by the railroad of a city ordinance prohibiting the blocking of a crossing in the city by a railroad company for more than three minutes at a time, the plaintiff has the burden of proving that the crossing in question was inside the city limits and that the railroad car into which the automobile collided had been blocking the crossing for more than three minutes, and where the plaintiff's evidence is not of sufficient probative force to be submitted to the jury on these questions a nonsuit is proper.

3. **Customs and Usages A a: B a—Evidence held insufficient to establish custom or that plaintiff relied thereon.**

Evidence in this case held insufficient to establish a custom of a railroad company to keep a watchman at a certain crossing, and there being no evidence that the plaintiff relied on such alleged custom in using the crossing, the exclusion of testimony of such custom was proper.

CLARKSON, J., dissents.

CIVIL ACTION, before *Barnhill, J.,* at October Term, 1931, of NEW HANOVER.

On 28 May, 1930, the plaintiff was a passenger in an automobile owned and operated by her husband, the defendant, Harry Goldstein. They were returning to Wilmington from Wrightsville at about eight o'clock at night. The road was straight and the car was traveling about twenty-five or thirty miles an hour. The tracks of defendant railroad crossed the Wilmington to Wrightsville highway at grade. At or near the junction of the county line and city limits of Wilmington the said defendant maintains a belt line and was engaged in shifting cars at or about the crossing. A gondola car blocked the crossing and the defendant, Harry Goldstein drove the automobile into said gondola car, inflicting injuries upon his wife, the plaintiff. There was neither watchman nor light at the crossing. The plaintiff introduced in evidence two ordinances of the city of Wilmington. The first ordinance required the defendant, Railroad Company, to ring the bell of the engine whenever the engine was moving across any street or highway within the limits of the city. The other ordinance made it unlawful for "any railroad company, its agents or employees to stop, place or leave standing for a period exceeding three minutes, at any one time, any engine or locomotive, or car of any description, across or along any street within the city limits in such a manner as to prevent the free passage of pedestrians, carts, drays or other vehicles along such street. In all cases where engine, car or cars are placed and left across any street

GOLDSTEIN *v.* R. R.

or portion thereof, an opening or space, of not less than twenty-five feet at or near the center of the street, shall be kept clear for travel."

The home of the Evans family was about fifteen feet from the crossing. Mr. Evans testified that he was in his house assisting one of his children in preparing lessons. He said: "The train come up and made some noise, and my smallest child, a knee-high baby, got up and went to the window and said: 'You hear the ding dong,' and I was still teaching the child his lesson, and I will say four or five minutes after the kid went to the window I heard the crash. . . . I could not say if it was standing still or moving from the time I heard the bell. It was across the crossing for four or five minutes, it seemed right up to my window. The train must have been blocking the highway for four or five minutes, because the cars were across the road. I heard the train when it backed up there and stopped and I heard the train bell ring and I heard her blow. . . . I could not say the train was moving at the time I heard the whistle and bell; I didn't see it. . . . I do not know just when the train went on the sidetrack from the belt line, but I would say it had been there four or five minutes. I imagine the train was coupling like they usually do from the time I first heard it blow until I saw the accident. It was also switching, I suppose." This witness testified that after he heard the crash he opened the door and ran out barefooted.

Mrs. Lula Evans, wife of J. W. Evans, said: "I was sitting in the kitchen around the table with my husband learning the children their lessons. I heard the train as it came upon the spur track and stopped. I heard it stop. I afterwards heard the crash. It was about five or six minutes after I heard the train stop. . . . I heard the train come up. I imagine it had stopped five or six or seven minutes before I heard the crash. How long it stood still I cannot say. I don't have a clock or watch in the room, but it was some time. I was in the house. . . . This gondola car had been across the crossing for five or six or seven minutes before Mr. Goldstein hit it. I imagine it was on there. It was standing there some time. As to swearing it was standing on the crossing, I could not tell you until after I heard it crash. It was found on the crossing. I never saw it on the crossing until I went out."

At the conclusion of the evidence of plaintiff, the trial judge sustained the motion of nonsuit as to the defendant, Atlantic Coast Line Railroad Company, from which judgment the plaintiff appealed.

*Newman & Sinclair, John A. Stevens and Bryan & Campbell for plaintiff.*

*Thomas W. Davis and Carr, Poisson & James for Atlantic Coast Line Railroad Company.*

BROGDEN, J. The plaintiff bases her right to recovery upon the following elements of negligence:

1. That the railroad company failed to provide a watchman or signaling device at the crossing.

2. That the company, in violation of the ordinance of the city of Wilmington, permitted a gondola car to remain over the crossing more than three minutes.

There was some contention about the failure of the railroad company to maintain a stop sign at the crossing, but there is no specific allegation in the complaint alleging the absence of a stop sign as an element of negligence. The evidence disclosed that no regular train was operated at this point and that no shifting was done at regular intervals. The highway was straight and there is no evidence of such obstruction as to require, as a matter of law, the maintenance of watchmen or signaling devices. Upon this aspect the case falls within the line designated and marked out in *Eller v. R. R.,* 200 N. C., 527, 157 S. E., 800. See, also, *Batchelor v. R. R.,* 196 N. C., 84, 144 S. E., 542.

The effectiveness of the contention that the railroad company was violating the ordinance of the city of Wilmington must be determined by the answer to two preliminary questions.

1. Did the accident happen within the corporate limits of the city of Wilmington?

2. Was there any competent evidence that the flat car or gondola car had remained across the highway more than three minutes?

The only evidence relating to the *locus* of the collision is the testimony of City Engineer Maffitt, who said: "Mr. Sinclair understood me to say the accident took place inside of the city. I said: 'I do not see how it could have taken place inside of the city because the evidence showed the accident occurred on the opposite side of the city.'" The burden was upon the plaintiff to offer evidence tending to show that the collision took place within the city limits, and therefore subject to the restrictions contained in the ordinance. It is obvious that the evidence relied upon fails to show that the accident happened within the city limits. Indeed, it tends to show the contrary. The ordinance by express language applies to "any street within the city," etc. However, if it be conceded that the ordinance applied to a portion of a street within the city and that the point of collision was partially within the city limits, then in such event the law imposed upon the plaintiff the burden of offering evidence that the crossing had been blocked more than three minutes. The only witnesses offering testimony as to the length of time the crossing had been blocked, were in the house with the doors closed until the crash. They do not undertake to say, as a matter of fact, how long the crossing had been blocked, but they do give certain

conclusions which they drew from the noise and operation of the train in the vicinity. This is not sufficient to meet the burden cast by the law upon the complaining party.

The plaintiff excepts to the exclusion of certain evidence to the effect that it was a custom of the railroad company to place a watchman at the crossing when it was blocked. The exclusion of the testimony was proper. The evidence of custom was insufficient in character and probative quality; notwithstanding even if it be conceded that there was competent evidence of custom, there is no evidence that the driver of the car or the plaintiff either knew of or relied upon its existence. *Penland v. Ingle,* 138 N. C., 456, 50 S. E., 850; *Crown Co. v. Jones,* 196 N. C., 208, 145 S. E., 5; *McLellan v. R. R.,* 155 N. C., 1, 70 S. E., 1066.

Affirmed.

CLARKSON, J., dissents.