LEROY REEVES v. TAYLOR-COLQUITT COMPANY AND C. L. HICKMAN.

(Filed 29 March, 1961.)

1. **Master and Servant § 22—**

Where plaintiff employees' testimony tends to show that he had used the same equipment for more than two years in loading, transporting, and unloading timber, that the accident in suit was not the result of the failure to provide his truck with safety chains for holding the logs, and there is no evidence that safety chains were approved and in general use in hauling timber, the evidence fails to disclose negligence on the part of the employer in this respect.

2. **Same— Evidence held insufficient to show that employer was negligent in failing to provide reasonably safe place to work.**

Plaintiff's evidence tended to show that he had been engaged in the same work with the same equipment for over two years in hauling timber to a lumber plant, that he apparently fixed his own hours, that he was unloading timber at night, and that after he had gotten under the truck to knock out the standards so that the timber would fall and was getting out from the truck on the opposite side, his foot slipped on a stick or piece of wood, throwing his leg under the falling timber. *Held:* The employer was not under duty to furnish lights that would illuminate under the truck, and the presence of the stick or piece of wood under the truck was not an unusual circumstance and was more easily discoverable by the employee than by the employer, and nonsuit was correctly entered.

3. **Appeal and Error § 45—**

Where, in an employee's action against his superior, the evidence is insufficient to be submitted to the jury on the issue of negligence, the exclusion of evidence that the superior was not an independent contractor, offered for the purpose of holding the corporate defendant liable under the doctrine of *respondeat superior*, cannot be prejudicial.

APPEAL by plaintiff from *Bundy, J.,* November, 1960 Civil Term, NEW HANOVER Superior Court.

The plaintiff instituted this civil action to recover for personal injury received while he was unloading logs from a truck at the Taylor-Colquitt lumber plant. At the time of the injury he was employed by the defendant Hickman and was using Hickman's equipment. For two years and five months prior to the night of the injury the plaintiff had operated this same truck and delivered logs to the Taylor-Colquitt yard. On the night of the injury the plaintiff was admitted to the yard by the night watchman and proceeded to the unloading ramp. There were no lights at this ramp.

On direct examination, the plaintiff testified:

"The way you would unload the truck was to drive up a ramp and put two poles so they would roll off on them. You would take the chains off first, and then you would have a crowbar and you prize off your standards, and the poles roll off. . . . I had to go under the truck to trip the chains. There were no other chains in usual use where you could unload the truck without having to get under it.

"I didn't have a safety chain or unloading chains, and there were such chains in use. I saw those safety chains on the Taylor-Colquitt trucks, I saw one . . . The truck I was driving didn't have one of those safety chains, and to unload it you had to get under your truck and knock out the standards. You had to get under it with a crowbar and prize the chains off.

"The way I was working when I was injured was that I put my poles to unload as I always did, and I went to the back and tripped the back standard first and returned to the front, and when I tripped the load, I started out under the truck to the opposite side from where the load was falling, and I stepped on a piece of round wood, and it shoved my left leg out. The round wood was some of the trash that I described as being on the ground at that point. This round piece of wood threw my leg outward, and I went down on my knee, and the pole hit me. Yes, that block of wood knocked my leg out under the falling pole, and it broke my left leg. That block of wood kept me from getting out of the way of the pole, and there was not sufficient light for me to see there was a block of wood in the way."

On cross-examination, he testified:

"I had been driving a truck for Floyd Huffham two years and for Hickman five months, and I drove the same truck for Mr. Huffham that I drove for Hickman. The truck was not new when I started driving for Mr. Huffham, but it was in good

condition. I know the manner in which to load the truck and the manner in which to unload it, and I am familiar with it in every respect. I had been furnished a regular loading chains and have used them for two years and five months prior to the accident and had no trouble with the chain and no trouble with the truck . . . I drove the truck into the yard, and at that time didn't see the object I stepped on. It was about two feet long, and I had not driven the truck on top of it. I was under the trailer part, and didn't see it until after I had stepped on it. I probably wouldn't have been hurt if that object had not been there. . . . The manner in which the poles were loaded had nothing to do with my getting hurt . . . I got under the truck to trip the standards. . . . I worked for Mr. Hickman five months and for Mr. Huffham two years, and I had driven this truck for two years and five months."

The plaintiff also offered medical testimony as to his injury. The court, upon defendants' objection, excluded the contract between Taylor-Colquitt Company and Hickman with respect to hauling and delivering the poles. Defendant Hickman employed the plaintiff to make the deliveries at $5.00 per load.

The plaintiff bases his right to recover on (1) failure to have the yard lighted at night; (2) failure to keep the vicinity of the loading ramp free from obstructions; (3) and failure to furnish safe devices and implements for unloading.

At the conclusion of the plaintiff's evidence, the court entered judgment of involuntary nonsuit from which the plaintiff appealed.

*Addison Hewlett, Jr., Isaac C. Wright, for plaintiff, appellant.*
*S. Bunn Frink, for defendant C. L. Hickman, appellee.*
*Stevens, Burgwin, McGhee & Ryals, for defendant Taylor-Colquitt Company, appellee.*

HIGGINS, J.    After careful consideration, this Court concludes that the evidence offered is insufficient to show actionable negligence on the part of either defendant. ". . . As we view the entire evidence, plaintiff's fall is just one of those events which sometimes occur without one's foresight or expectation, and therefore not anticipated, the consequences of which must be borne by the unfortunate sufferer." *Klassette v. Drug Co.,* 227 N.C. 353, 42 S.E. 2d 411.

The plaintiff's evidence disclosed that he was engaged in hauling poles at $5.00 per load for the defendant Hickman, whose duty it was to deliver them to Taylor-Colquitt Company's plant. The plaintiff had been engaged in this work for two years and five months, using

the same truck and the same loading and unloading equipment. He was thoroughly familiar with the equipment and the conditions at the plant. He apparently fixed his own hours. The evidence indicates nothing to the contrary. Much of the unloading was done at night. On one occasion only did either Hickman or Taylor-Colquitt assist. "The company unloaded my truck one time with the crane when I was carrying three 90-foot poles and couldn't get them off." During the two years and five months the plaintiff knew of one instance only in which an unloading chain different from his equipment was used at the plant. So far as the record shows, no other accident or injury resulted from the use of Hickman's equipment, or others like it. Likewise, the evidence is totally lacking that unloading conditions had changed for the worse during the time of plaintiff's employment.

The plaintiff thus explains the accident: "I got under the truck to trip the standards and the chains had nothing to do with my getting hurt. The chains had been taken off the load and the poles had been properly secured. The poles could not fall off until I tripped it and when I tripped it I stepped on something and my foot slipped and my left foot stuck out and I got hurt. My stepping on that object was the reason for my getting hurt and nothing else. That is what I would say was the sole cause of the injury . . ."

The plaintiff actually stepped on a stick or pole about two feet long. This was a part of the "trash" on the ground. "There were no lights . . . where you unload and I needed lights to see how to unload in safety."

The plaintiff had been hauling nine or ten loads per week for two years and five months. The evidence does not disclose anything unknown to him or different from what is to be expected at a large timber and lumber plant. Yet he chose to unload at night with full knowledge of these conditions. His accident happened at a place and in a manner and under conditions which had proved safe for nine or ten operations per week for two years and five months. The accident happened because the plaintiff's foot slipped on a stick at the exact moment a pole fell from the truck. The plaintiff's contention that one or both defendants were negligent in failing to provide an unloading chain is not supported by the evidence. Boiled down to its essence, during all the time the plaintiff worked at the plant he knew of only one instance in which an unloading chain or crane was used.

We conclude the plaintiff's evidence is insufficient to charge either defendant with actionable negligence. The danger of slipping on a stick was as obvious to the plaintiff as to any employee, officer or agent of either defendant. Under such circumstances, when the servant is permitted to do the work in his own way, as here, "The servant cannot

recover against the master . . . This rule is especially applicable when the danger does not arise from the defective condition of the permanent ways, works, or machinery of the master, but from the manner in which they are used, and when the existence of the danger could not well be anticipated, but must be ascertained by observation at the time." *Simpson v. R.R.*, 154 N.C. 51, 69 S.E. 683.

The facts here disclosed do not indicate any duty on the defendants, or either of them, to install such lighting fixtures as would illuminate the ground under the truck.

Whether the contract between Hickman and Taylor-Colquitt made the former an independent contractor is immaterial. The exclusion of the contract, therefore, was nonprejudicial.

"A careful examination of the case leads us to the conclusion that if the injury to the plaintiff was caused by negligence, it was not that of the defendant, and the motion for a nonsuit should have been granted." *Simpson v. R.R., supra.*

The judgment of compulsory nonsuit in the court below is
Affirmed.