**Robert Lee WATKINS**

**v.**

**CONTINENTAL CAN CO.**

**No. C-15-WS-63.**

United States District Court
M. D. North Carolina,
Winston Salem Division.

Dec. 28, 1963.

Hudson, Ferrell, Petree, Stockton, Stockton & Robinson, Norwood Robinson, Winston Salem, N. C., for plaintiff.

Deal, Hutchins & Minor, Winston Salem, N. C., for defendant.

HAYES, District Judge.

At the close of plaintiff's evidence defendant moved for a directed verdict in its favor because the evidence failed to establish any actionable negligence against the defendant, and on the ground that plaintiff's evidence affirmatively showed that he was guilty of contributory negligence proximately causing his injury. Ruling on the motion was reserved until the close of the evidence under Section (b) of Rule 50. The motion was renewed at the close of all of the evidence and again the court reserved its ruling, permitting the jury to have the case. It returned a verdict in favor of plaintiff.

In apt time defendant filed motions in its favor notwithstanding the verdict, and a motion to set aside the verdict and for a new trial. The procedure complies with Rule 50 of Federal Rules of Civil Procedure as construed by the Supreme Court in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Johnson v. N. Y. etc. R. Co., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77.

The motion for a judgment N.O.V. tests the legal sufficiency of the evidence to support the verdict. The test is one of law, while the motion for a new trial is discretionary. McCracken v. Richmond, F. & P. R. Co., 4 Cir., 240 F.2d 484, 488. Judgment should not be entered if there is any substantial evidence to take the case to the jury when considered in the light most favorable to the party against whom the judgment is entered, and any conflict in evidence must be resolved in his favor and every conclusion or inference that can be legitimately drawn therefrom. Tedder v. Merchants & M. Ins. Co., 251 F.2d 250, at 254 (4cca); Burcham v. J. P. Stevens & Co., 209 F.2d 37(4cca). It should be granted if the evidence amounts to no more than a mere scintilla. Atlantic Coast Line R. Co. v. Collins, 235 F.2d 805 (4cca). In this case judgment was reversed and trial court was directed to enter judgment in favor of defendant.

The defendant on Feb. 17, 1961 shipped from its plant at Haverhill, Mass. to D. D. Beam and Sons at Winston Salem, N. C. a box car load of paper consisting of eighty rolls. This car was practically new bearing the date of August—1960. Its inside measurement was fifty feet six inches in length and nine feet and four inches wide. A single layer of eight rolls of paper filled the car from side to side. There were ten rows which filled the car from end to end, excepting about six inches. The rolls of paper were round, weighing from 750 lbs. to 980 lbs. each. They averaged about five feet in diameter. The paper was machine cut 13$\frac{5}{16}$ inches wide and was wrapped around a core as tightly as possible and was solid and practically as hard as a board. Eight rolls were put in a row across the car, by first completing the first row at each end of the car. In placing the next rows, each row was started against the wall and at the opposite side of the car. In this way the fifth row from each end made the two center rows. It will be seen that the eight rolls, standing side by side occupied 106½ inches, if the rolls were wound up perfectly straight but the evidence showed that some of the rolls bulged a little near the core. As the rolls were loaded the first row started against the side of the wall of the car which left a few inches of open space at the opposite end and the second row would be started at the opposite side staggering the rows, this way

each row served to brace the row behind it. It was customary to insert in front of the rolls in each row pieces of 2 × 4 lumber of varying length but the pieces were driven tightly under the rolls. These pieces were called chocks. This method was followed on each row but a different method called bracing was used between the number five rows. Between these two rows triangular blocks, cut to fit the vacant space between these rows were inserted tightly and nailed to the floor of the car. Two pieces of 3 × 4 × 54 inches in length were placed in front of each of these rows and securely nailed. The total length of these two pieces was 108 inches, leaving only four inches from wall to wall but there was an inch or more of space between them at the center. These pieces between the center rows exerted pressure against all of the rolls in each end of the car, and normally held each roll securely.

The plaintiff introduced answers to interrogatories and the deposition of Ira B. Clairidge whose duty was to inspect and install the braces between the two center rows. He loaded two hundred cars a year and had averaged this number for ten years. The strongest evidence in favor of the plaintiff was his statement that if the load was properly braced it would be impossible for a roll to fall out of the door. The evidence about the function of the chocks was confusing; in some instances it appeared that the chock under each roll was to hold it in place, some of it indicating that their only function was to hold them from rolling forward until the braces at the center could be installed and thereafter they served no useful purpose. There was evidence to show that chocks were placed under rolls when they were loaded, and evidence to show that there was no chock in front of the roll immediately behind the end roll in row No. 5, the roll that fell out and injured plaintiff when the door was opened. There was evidence tending to show that the 3 × 4 in the center of the car was too short and did not extend toward the door enough to be in front of the roll that fell out.

When considered in the light most favorable to plaintiff these conflicts created a jury question as to the negligence of the defendant. While the regulations of the railroad associations do not require the high standard of care employed by defendant, that does not exclude the fact that this defendant had pursued this method for ten years in shipping two thousand car loads. The evidence tending to show that the brace in this car did not extend far enough to be under the roll that fell out raises a jury question as to the failure of the defendant to exercise its own standard of care in this instance. Admittedly, the question of foreseeability is extremely close. The braces were intended to prevent the roll of paper from rolling forward, not falling sidewise.

The standard of care required of the shipper is that of a reasonably prudent man which does not necessarily confine it to the standard approved by the Association of railroads or to the higher standard customarily employed by defendant.

The defendant contends that the opinion of shipper that a roll would not fall out if properly braced is insufficient, contending that such an opinion has no substantial probative value when considered in the light of all the evidence, citing Austin v. Overton, 222 N.C. 89, 21 S.E. 2d 887; Brown v. Wood, 201 N.C. 309, 160 S.E. 281; Lucas v. White, 248 N.C. 38, 102 S.E.2d 387; Jones v. Schaffer, 252 N.C. 368, 114 S.E.2d 105 and Burgess v. Mattox, 260 N.C. 305, 132 S.E.2d 577. But the evidence here presents a stronger case for the plaintiff as to the negligence of the defendant, and is not controlled by the above authorities.

The plaintiff was an experienced employee of W. A. Collins and Co., a draying company, with more than five years experience. He was the man in charge of unloading this car, having two fellow laborers under his control, to assist in the unloading. He had unloaded about twenty similar car loads of paper. He therefore knew the braces on the

floor secured the rolls of paper. In this connection, Clairidge the inspector said that he had never had a complaint of damage to paper or persons on a single one of the 2000 cars he had braced.

On March 8, 1961, the plaintiff with his two helpers took a truck to the freight car to unload the paper. As the agent of the consignee he had the control and management of the car and its cargo and was free to choose the method and manner of unloading it. The plaintiff with a crow bar broke the seal on the car and prized the door open about 15 inches and saw rolls of paper standing upright, said everything looks Ok. and called the men to help him shove the door open. There were two doors on each side of the car, each eight feet wide. The door on his right was a corrugated door; the one on the left was smooth. Before lunch on the day of the trial he insisted repeatedly that it was the left door he prized open, but he testified in the afternoon that he was mistaken, that it was the corrugated door he prized open to peep in. He said he saw the tops of some rolls of paper but made no claim of seeing all of them or of even looking more than casually. But he repeatedly testified that he never thereafter looked into the car or on the floor where the braces and chocks could be seen or where he could have discovered they were missing or of the position of the roll that fell out.

He said it was desirable when you started to open a freight car door which has metal tracks on the side of the car with rollers mounted on the door, to keep it going; if you let it stop, you might have to pinch it with a crowbar to start it again. So he called one of his helpers to pull at the right end of the door and the one in the center of the door to hold the lever and pull, while he pushed at his end of the door. These three were engaged in ramming the door open, and at the instant it was opened, the end roll in No. 5 row fell out, striking plaintiff on his left shoulder, knocking him down, and falling on him. He said the instant he looked up, he saw it falling, but that he could not get out of the way. Fred Johnson who was at the center of the corrugated door said he looked up just when he got the door open and saw the roll falling out flatwise. The third man who was pulling at the other end of the door never saw the roll until it was down on the plaintiff.

It was a physical impossibility for the roll to fall out unless it was tilted and leaning against the door. When the door was pushed from under it, of course, it fell. The width of the roll was 13⅝₁₆ inches and its diameter five feet, and weighed 980 pounds. It is a physical fact that the top of the roll would have to be tilted 11 inches off center before it could fall flatwise; less than that, it would return to its upright position. It would take 98 pounds of pressure exerted against the side of the roll at its top for it to tilt it off center. These physical facts also show that the roll of paper was not in that position when it was loaded; had it been, it would have fallen out and the door could not have been closed with the roll of paper leaning against it. The physical facts show it was dislodged in transit.

There was no evidence that anything mechanically was wrong with the door requiring the exertion of three men. The heavy roll of paper leaning against the door operated as a brake to hold it back. That fact alone would cause a reasonably prudent man to investigate what was wrong. There was evidence that the car was new, its date of manufacture stamped on it August—1960, and the accident occurred March 8, 1961. The failure to see the leaning roll of paper which fell on plaintiff when he pushed the door from under it was due entirely to his want of due care to see what he could have seen if he had looked.

The doctrine of res ipsa loquitur does not apply here because the property was not under management or control of defendant. Wright v. B. F. Huntley Furniture Co., D.C., 197 F.Supp. 117, affirmed in 299 F.2d 904(4cca). In that case a carton of furniture fell out of the freight car when the unloader opened the door

without looking and he was held guilty of contributory negligence.

The shipper is not an insurer but he is required to use reasonable care not to subject the consignee or his employee to any latent or hidden danger not discoverable by the exercise of ordinary care. There was no evidence of any latent or hidden danger in this load of paper.

It is the law of North Carolina that a worker who is free to select his own manner or method of doing an ordinary task or where conditions are changed by his efforts, he is required to exercise ordinary care for his own safety. There is no reason why this principle should not apply to the unloading of a freight car. If he fails to do so and is injured it is either an accident or contributory negligence. There are many decisions of the Supreme Court of North Carolina which establish this principle. Simpson v. Southern R. Co., 154 N.C. 51, 69 S.E. 683. Plaintiff and two fellow employees were loading cross ties on a flat car and while rearranging the ties, one fell on his foot. The court held that if the injury was due to negligence it was not that of defendant and nonsuit should have been allowed. To same effect was Reeves v. Taylor-Colquitt Co., 254 N.C. 342, 118 S.E.2d 915, where a log fell on plaintiff while unloading. Justice Higgins said: "[The injury] is just one of those events which sometimes occur without one's foresight or expectation, and therefore not anticipated, the consequences of which must be borne by the unfortunate sufferer." Nonsuit was proper. The principle was reiterated in Lee v. Carolina Upholstery Co., 227 N.C. 88, 40 S.E.2d 688. Here a rope slipped in plaintiff's hand, caused him to lose his balance and fall into an elevator hole. In Warwick v. Lumberton Oil Co., 153 N.C. 262, 69 S.E. 129 plaintiff while performing his work, stood on a pile of cotton seed; his foot slipped and was caught in machinery, but a nonsuit was proper. In Porter v. Niven, 221 N.C. 220, 19 S.E. 2d 864 plaintiff was held guilty of contributory negligence while pulling a truck load of milk, walking backwards, assuming the hallway free of obstruction, and fell over a churn which he could have seen if he had been looking. In Brown v. Texas Co., 237 N.C. 738, 76 S. E.2d 45, plaintiff selected an unsafe place while trying to do the work where he was free to choose the manner and method. It was there held: "The conclusion that the hazard he thus created was at least one of the proximate causes of his fall and resulting injuries is inescapable."

Justice Walker, in Mace v. Carolina Mineral Co., 169 N.C. 143, 85 S.E. 152, where a mine foreman was killed by a falling rock in defendant's mine after he had removed the supports under it, said: " 'An employer's duty to provide for his employés a reasonably safe place to work does not extend to ordinary conditions arising during the progress of the work when the employé doing his work in his own way can see and understand the dangers and avoid them by the exercise of reasonable care.' * * * 'The general rule of law is that when the danger is obvious and is of such a nature that it can be appreciated and understood by the servant as well as by the master or by anyone else, and when the servant has as good an opportunity as the master or anyone else of seeing what the danger is, and is permitted to do his work in his own way and can avoid the danger by the exercise of reasonable care, the servant cannot recover against the master for the injuries received in consequence of the condition of things which constituted the danger. If the servant is injured, it is from his own want of care." It was here held that a man of ordinary intelligence would know that to withdraw a prop or foundation from an object resting upon it would cause it to fall; it may be assumed that an adult has that knowledge which is required by common experience and understands those dangers which may readily be known by common observation. All adults are presumed to have some knowledge of the properties of nature, and the operation of natural laws, such as the law of gravitation.

Where a person sees a dangerous condition, but ignores it, and is hurt,

he is guilty of contributory negligence. The principle applies when in the exercise of ordinary care he could discover the danger by looking or listening. When he fails to see and hear because he negligently fails to look and listen what he could have seen and heard if he had looked and listened, his subsequent injury is proximately caused by his own want of care. Godwin v. Atlantic Coast Line R. Co., 220 N.C. 281, 17 S.E.2d 137; Trull v. Seaboard Air Line R. Co., 151 N.C. 545, 66 S.E. 586; Harrison v. North Car. R. Co., 194 N.C. 656, 140 S.E. 598. The law does not protect one who has eyes to see and will not see and ears to hear but will not hear. Elder v. Plaza R. Co., 194 N.C. 617, 140 S.E. 298; Pope v. Atlantic Coast Line R. Co., 195 N.C. 67, 141 S.E. 350; Jones v. Schaffer, 252 N.C. 368, 378, 114 S.E.2d 105. As plaintiff was pushing at the end of the door, he passed by and walked under the huge roll of paper five feet in diameter. It seems incredible that he didn't see it before it fell. At all events it was there for him to see if he had opened his eyes. His failure to exercise due care was a proximate cause of his injury and bars a recovery.

It is the duty of a federal judge to direct a verdict in favor of defendant if the evidence conclusively establishes contributory negligence by the plaintiff which is one of the proximate causes of his injury. In Anderson v. Southern Railway Co., 20 F.2d 71(4cca) where deceased was killed while unloading a car of telegraph poles, it was held: "It was clearly the duty of the deceased, as foreman of the unloading crew, to see to it that the car was unloaded in a safe manner; a thing which could have undoubtedly been done in two or more ways. * * A man has no right to be careless and reckless in the face of open and apparent danger, and if he proceeds under such circumstances he is guilty of contributory negligence to a degree that bars a recovery." Also Wright v. B. F. Huntley Furn. Co., supra. To same effect is United States Steel Corporation v. McCraney, 257 F.2d 457(5cca)—unloading pipe—and Nashville Bridge Co. v. Ritch, 276 F.2d 171(5cca)—employee hurt while unloading steel girders—The rule is stated to be that the federal judge must determine whether there is any evidence upon which a jury can properly find a verdict for the party producing it. In the last case the court said: "Whether our decision is based primarily on failure of appellee to prove negligence by substantial probative evidence, upon assumption of risk, or upon appellee's contributory negligence is not important. We conclude, as we did in McCraney, that the evidence before us does not make out a case against appellant."

The mere glancing into the car by the plaintiff is of no probative value, warranting the submission of the case to the jury, where the physical facts show conclusively danger was observable if he had looked. Atlantic Coast Line R. Co. v. McLeod, 11 F.2d 22(4cca); United States v. Diehl, 62 F.2d 343(4cca). When the testimony of a witness is positively contradicted by physical facts, neither the court nor jury can be permitted to credit it. Norfolk Sou. Ry. Co. v. Swindell, 139 F.2d 71(4cca). It is permissible to consider explanatory evidence in determining probative value of evidence. Atlantic Coast Line R. R. Co. v. Collins, 235 F.2d 805(4cca); Grubb Motor Lines v. Woodson, 175 F.2d 278 (4cca); United States v. Grannis, 172 F. 2d 507 at 513.

For the reasons stated above and without going into the details concerning the inadequacy of sufficient evidence to establish actionable negligence against the defendant, the plaintiff was guilty of contributory negligence as a matter of law and the motion for a directed verdict in favor of the defendant should have been, and is now granted, notwithstanding the verdict of the jury. Let a judgment be entered accordingly.

The defendant having also moved for a new trial and to set aside the verdict for the reasons assigned in the motion and the court being of the opinion that the court should also rule on the

motion for a new trial, as indicated in Montgomery Ward & Company v. Duncan, 311 U.S. 243 at 253, 61 S.Ct. 189 at 195, 85 L.Ed. 147, the court holds that if the Circuit Court should reverse this court for entering judgment in favor of the defendant n. o. v. and in that event the motion to set aside the verdict and for a new trial should be granted for the reason that the verdict is against the greater weight of the evidence and the damages are excessive. The court is of the opinion that the statement by plaintiff's counsel to the jury that the plaintiff was suing for $150,000.00 had an improper influence on the jury. For these reasons the court, in the exercise of its discretion, grants a new trial on all issues in the case if its judgment, n. o. v. is vacated.

The plaintiff is allowed an exception to the granting of the judgment n. o. v. and also for setting aside the verdict and granting a new trial.